[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CUSTODY PETITION UNDER GENERAL STATUTES,SEC. 46b-61
The plaintiff father of Matthew Joseph Oliveira, born August 7, 1990, petitioned the court on June 15, 1994 for a custody and visitation order concerning Matthew, under Sec. 46b-61, which provides as follows:
 In all cases in which the parents of a minor child live separately, the superior court for the judicial district where the parties or one of them resides may, on the complaint of either party and after notice given to the other, make any order as to the custody, care, education, visitation and support of any minor child of the parties, subject to the provisions of sections 46b-54, 46b-56, 46b-57 and 46b-66.
The matter was referred to the Family Relations office for a custody study. Leslie Raider, an experienced and highly professional Family Relations Counselor, filed a preliminary and a follow-up report with the court, and testified in accordance with those reports. The court, which conducted parts of three days of testimony, cannot improve on the factual findings or conclusions of the reports. They are printed herein in toto, and the court adopts the report and recommendations as its own factual conclusions and orders, except where additional orders are made by the court herein below.
The original report, ordered by the Waterbury Superior Court, CT Page 14187 dated February 23, 1995 (Plaintiff's Exhibit 5 is attached hereto).
On September 18, 1985, the court referred this matter once again to Family Relations for an updated custody evaluation. The second report (Plaintiff's Exhibit 6 is also attached hereto).
Grace is an attractive hard-working woman, thirty-nine (39) years old, consumed by bitterness that her long-time live in companion Joe wouldn't marry her and give her the loving family life she so ardently desires. She is a devoted mother who dotes on their son Matthew. Despite her professed great love for their son and her stated desire that Joe play a meaningful role in the boy's life, she has done everything humanly possible to thwart Joe's attempts to be a loving non-custodial parent.
Her testimony is much less credible than his. She testified from a calendar that Joe failed to show up for fifty to sixty scheduled visitations. He testified exactly to the contrary, that he would show up again and again and she would not answer the door or prevent Matthew from going with him. The court finds his version of these events much more credible. He did his best to play a constructive role in Matthew's life but Grace frustrated his efforts at every turn.
Grace claimed that Joe has been a continuing heavy user of marijuana and cocaine up to the present time. Joe claims he has been clean for a long period of time. The court concludes that while he may well not be entirely candid in his testimony, there is no credible evidence that he is now a drug user to an extent that would make him an unfit father for Matthew.
Grace emphasizes certain periods of his life when Joe was an irresponsible companion, and during a certain period did not press his visitation rights as vigorously as he has in recent years. Once again, Grace is painting the picture as bleakly as possible to facilitate her move to Portugal, and thus effectively crowd Joe out of his son's life. The court concludes that Joe has made a commendable effort to be with Matthew, to do constructive things with him, and to share in his development as a well-balanced and happy youth. He has not done more because Grace put roadblocks in his way.
It is Grace's fervent desire to move to Portugal with their son, which is the key to the decision in this case. With CT Page 14188 financial help from her father she has built a house in her hometown. Her parents, siblings and numerous close relatives live in the small town. She wouldn't feel so lonely and neglected any more. She would have a warm blanket of cultural affirmation of her self-worth, and Matthew would grow up hardly knowing his father, 3000 miles away from where he was born, speaking only limited English, which his father uses in most matters. This is too steep a price for her much desired removal to her home country.
It is a truism that, all things being favorable with both parents, it is in a child's best interests to have a bonding relationship with each parent. Grace agrees with the court, but says it can't apply in this case because of Joe's unfitness to be a good father. The court does not agree with this exception. He has been a loving and caring father and is prepared to do more when given the chance. It is in the best interests of Matthew that this occurs.
Nothing in this opinion is meant to be critical of Grace. Her feelings of abandonment and rejection are entirely understandable. But with regard to the best interests of Matthew, her feelings about the relationship between her and Joe have caused her to twist Joe's role in Matthew's life all out of reality and fairness.
Joe is also very hard-working. He makes a good living. His apartment is adequate for overnight visits. He is now, if not always in the past, a mature and responsible father who will properly play an enhanced role in Matthew's life.
Concerning the custody order, the court is persuaded by Raider's report and testimony. Attorney Foster, counsel for Matthew, whose report and cooperation were very valuable to the court, recommended joint custody. The court at first inclined towards joint custody. Yet, Raider testified with authority that it couldn't possible work with warring parents as hostile to each other as Grace and Joe are.
The following orders are entered:
1. Sole custody of Matthew is awarded to his mother, Grace Felicio. She has been the main care provider and has done an excellent job, other than blocking Joe out of Matthew's life. CT Page 14189
2. The father, Jose (Joe) Oliveira, is granted liberal, flexible and reasonable visitation with Matthew to include specifically the times recommended by Leslie Raider.
3. Grace is specifically ordered not move to Portugal with Matthew or anywhere else out of this state without approval of the court.
4. Grace is permitted to take Matthew with her to her hometown in Portugal for six weeks each summer after school lets out, at her own expense.
5. The plaintiff is ordered to pay to the defendant the sum of $143 per week per Child Support Guidelines, for support of the minor child Matthew.
6. The wage execution is to continue in force.
6. The plaintiff is ordered to provide such medical coverage for Matthew as is available to him at his regular employment.
7. The parties are ordered to take part in the parenting programs.
T. Clark Hull, State Trial Referee
(PLAINTIFF'S EXHIBIT 5)
BACKGROUND INFORMATION
This evaluation involved a custody dispute between the parents of four and a half year old Matthew Joseph Oliveira. Grace Felicio and Jose Oliveira reportedly have known each other for approximately eighteen years and have lived together over the past seven years. The parents separated in June of 1994. The child has continued to reside with his mother in what was the shared residence, a two bedroom condominium unit. The father has rented a two bedroom apartment situated on Elm Street in Danbury. The mother has objected to overnight visitation with the father based on the location of his residence, alleging a high level of violence within the neighborhood.
Matthew has visited with his father on a day basis with arrangements being made through the attorneys as to specific days CT Page 14190 and times on a monthly basis to coordinate with the father's varying work schedule. The mother reported inconsistency in the visitation, claiming that the father had not seen the child for approximately two months following the parental separation and that he had not visited according to the subsequently arranged schedules. The father alleged that the mother has denied him access to the child.
For the past four months, Matthew has attended St. Peter's pre-school and daycare on Monday, Wednesday and Friday from 9:00 a.m. to 4:00 p.m. Since 1986, Grace Felicio has supported herself by cleaning houses, generally working six hours a day, five days a week. She said that Matthew has accompanied her while she worked when the child was not in daycare. For the past five years, Jose Oliveira has been employed at the Kimberly Clark Corporation; working rotating twelve hour shifts with three days on, then three night shifts, followed by three days off.
SUMMARY OF ISSUES
The major issue contributing to the dispute between the parents was Grace Felicio's desire to return to live in Fornnos, Portugal where her mother and three brothers reside. Ms. Felicio felt that she had been the primary caretaker for Matthew since the child's birth. She questioned the father's motivation in pursuing custody, feeling that his interest in the child was a means to harass her.
Although the mother felt that the father loved the child, she did not believe that he had ever wanted to accept the responsibility of parenthood and claimed that he had spent a great deal of time away from the shared residence for two years prior to their separation. The mother spoke at length and with much emotion about allegations of infidelity by Mr. Oliveira. She objected to the child having any contact with Mr. Oliveira's girlfriend. Ms. Felicio alleged a history of alcohol and drug use by the father, claiming that he had used marijuana on a daily basis, had drank to the level of intoxication and had used cocaine. The father denied these claims. The mother also claimed a history of domestic violence against her by the father which had been witnessed by the child. Ms. Felicio felt that if she were to move to Portugal, extended family would provide any needed employment and daycare. The mother stated that if the court felt that it was better for Matthew to stay here or if Matthew missed his father, she would remain in the United States. CT Page 14191
Jose Oliveira expressed concerns regarding the mother's mental health, claiming that she had been hospitalized twice for suicide attempts. The father agreed that the child had witnessed marital arguments and claimed that the mother had thrown objects in anger at him. The father was concerned about the child's perception of Ms. Felicio, as he felt the mother had continued to cry and be emotionally upset in the presence of the child. He felt that the mother's behavior had effected the child's attitude toward visitation making the child hesitant to go with him.
The father felt that Grace Felicio took care of their son "extremely well", but that she should not try to take the child away from his father. The father objected to the fact that the child now shared a bed with his mother. The father strenuously objected to the mother's plan to move to Portugal. The father desired to have equal responsibility and regular contact with the child.
FAMILY ASSESSMENT
There did not appear to be any doubt that the mother historically has provided for the primary care needs of the child in a loving and competent manner. However, it was felt that the mother's attitude and judgment with respect to visitation have been influenced by her own feelings of betrayal, anger and resentment toward the father.
It appeared evident that the child has witnessed parental arguments which on occasion involved violence. In addition, the child has been exposed to emotional displays by the mother. The mother's difficulty in accepting the demise of her relationship with the father appears to have impacted on the child's emotional health as well as the child's attitude toward visitation. Based on her own statements and the emotionality displayed during her contact with this writer, it appeared that the mother has inappropriately exposed the child to the adult conflict inherent in the demise of the relationship.
Grace Felicio acknowledged and records confirmed three occasions, once in January of 1992 and twice in early August of 1992, when she sought treatment at the Crisis Intervention Center at Danbury Hospital. A diagnosis of "Adjustment Disorder with depressed mood" was offered on each occasion with the demise of her relationship with Jose Oliveira cited as the stimulus to her CT Page 14192 emotional difficulties. No follow up or sustained treatment has been obtained by the mother.
The mother's desire to return to Portugal and to limit the father's contact, with the child, was seen to reflect her own emotional needs rather than addressing the needs of the child. Although the mother has been the primary parent for this child, it was assessed to be important for Matthew to have an opportunity to form a relationship with his father separate from the parental conflict that has evidently been occurring throughout Matthew's life. The father appeared to be capable of providing adequate care for the child and sincere in his intent to remain active in the child's life.
Matthew's preschool teacher described him as being a "very well behaved child" who is "well liked by his classmates." His pediatrician viewed Matthew as having been physically well since birth. Upon last contact (December 1994), the doctor saw the child as being "very anxious" and felt that Matthew looked to his mother for reassurance while interacting with the doctor. The doctor noted that "concerns over the child's reaction to parental problems" were noted as early as 1992 and more frequently during the later part of 1994.
The pediatrician referred Matthew for counseling in the fall of 1994. Since mid-October Matthew and the mother have been seen twice a month with part of each session being spent individually with Matthew. The therapist reported reluctance on the part of the child toward visiting with his father and questioned the strength of the parent/child bond between Matthew and his father. Matthew reportedly has spontaneously expressed a fear that his father would hurt his mother. The therapist also said that Matthew had seen his mother upset and crying. She felt that Ms. Felicia had not established good boundaries with respect to exposing the child to her own emotional issues. The mother was described as being a loving parent who took excellent care of Matthew.
The mother appeared capable of continuing to provide for the child's custodial care needs as she has done since his birth. It was felt however, that the mother has allowed her own emotionality to interfere with her judgement with respect to Matthew's relationship with his father. The duration and intensity of the mother's emotional response to the demise of her relationship with the father was concerning and appeared to be in CT Page 14193 need of therapeutic intervention.
It did not appear to be in Matthew's best interest to separate him from his father. The mother has stated that if the court felt that Matthew would be negatively effected by a move to Portugal, she would remain here. There did not seem to be reason to limit the father's access to the child, but rather reason to structure visitation to reduce the likelihood of parental conflict being witnessed by Matthew. It would seem advantageous to Matthew for the father to have an opportunity to expand and solidify his relationship with the child without the stress created by the mother's emotionality. The father should also become involved with Matthew's therapy, as well as continue to have access to the educational and medical professionals involved with the child. The ineffective and at times destructive patterns of parental communication precludes a recommendation for joint custody.
RECOMMENDATIONS
It is recommended that the mother have sole custody of the child, subject to a defined schedule of visitation between the father and the child. Visitation should be arranged in accordance with the father's work schedule and the child's school schedule. It is recommended that the father have contact with the child on two of his days off from work during the week from the close of school until 7:00 p.m. In addition it is recommended that the father be entitled to two weekends a month from Saturday at noon until Sunday at noon to occur on those weekends when the father is not working. Specific days should be communicated by the father to the mother one month in advance at least seven days before the beginning of the month. It is also recommended that the father have contact with the child each New Year's Day, each Easter Day, each July 4th, and each Christmas Eve Day from noon until 7:00 p.m. and on Thanksgiving Day in odd numbered years from noon until 7:00 p.m. It is also recommended that the father be entitled to three hours of visitation on August 7th (the child's birthday) each year. It is recommended that beginning in the summer of 1996, the father be entitled to two seven day periods of vacation with the child during the summer school recess to occur nonconsecutively.
Respectfully Submitted,
Leslie L Raider CT Page 14194
Family Relations Counselor
(PLAINTIFF'S EXHIBIT 6)
BACKGROUND INFORMATION
The contested issue of custody of five year old Matthew Oliveira was referred for an evaluation on September 18, 1995 in anticipation of a trial date of October 17, 1995. The intent of this present report is to update the evaluation completed on February 23, 1995. The prior Family Services report should be referenced as a basis for any information contained in this report. The extent of contact for this update was limited to individual interviews with the mother, the father, and the child; and a telephone conversation with the child's therapist.
Both parents have continued to live at the same locations and to work at the same employment as is noted in the previous evaluation. Matthew entered kindergarten at Shelter Rock Elementary School in September of 1995. He reportedly attends the afternoon session from 12:30 p.m. to 3:45 p.m.
Jose Oliveira reported that his contact with Matthew went well for a few months following the issuance of the prior evaluation. The father indicated that since the end of June of 1995, he has been denied visitation with the child. Mr. Oliveira said that he had attempted to effect visitation on at least fifteen occasions since the end of June with no success. He said that over the past two to three weeks he had stopped trying to visit.
Grace Felicio claimed that Mr. Oliveiro had not appeared for visitation at the assigned times. She reported that Matthew had not seen his father since July 1, 1995 following a visit when Mr. Oliveira's girlfriend and her grandmother were present. The mother claimed that the father had hit the child on his hand during this visit. The father denied ever hitting the child. Ms. Felicia stated that she did not force her son to visit if the child expressed a preference not to visit.
SUMMARY OF ISSUES
Grace Felicio stated that she intended to remain in this area, delaying any move to Portugal until Matthew was old enough to decide for himself if he wanted to live there. The mother CT Page 14195 contended that the child was afraid of his father, identifying this fear as the basis for the child's reported refusal to visit. She believed that Mr. Oliveira did not care about the child. She again alleged that Mr. Oliveira was drinking and using drugs. The mother was asked to provide witnesses or some form of evidence to confirm these allegations. She has not done so. When questioned as to what contact she felt was appropriate between Matthew and his father, the mother responded that she did not know.
Jose Oliveira felt that Ms. Felicio had cut him off completely from their child. He said that he was not even sure where Matthew was attending school. Mr. Oliveira reported that when he attempted to telephone the child, he either was connected to an answering machine or the mother would say that the child was outside playing. Mr. Oliveira believed that the mother's intent was to hurt him by withholding the child. The father believed that Matthew had been interrogated by the mother each time the child returned from visitation and that the child was afraid of his mother and her reactions. Mr. Oliveira stated that he agreed with the recommendations [recomendations] relevant to visitation previously made by the Family Services Unit. However, he said that the schedule would need to be enforced and that he did not believe that the mother would comply. The father suggested that he pick up the child at school for visits.
ASSESSMENT OF ISSUES AND FAMILY
During an individual interview, Matthew presented in a reserved manner and was minimally responsive to questions. When asked to pictorially represent his family, Matthew did not include his father as part of his family. Matthew said he had not seen his father in a "long time".
In late August of 1995, the mother reinstituted therapeutic contact with Betsey Rodriguez for Matthew. The presenting problem was identified as bed wetting. Ms. Rodriquez reported that Matthew was saying to her that he did not want to see his father, that his father was a "bad guy", and that his father had hit him. Ms. Rodriguez indicated that she had terminated treatment in the spring of 1995 when Matthew was visiting with his father and had appeared to be doing well. Ms. Rodriguez said that at that time each parent was encouraged to recontact her if the situation warranted. Neither parent reportedly took advantage of this resource. CT Page 14196
On June 9, 1995 Jose Oliveira was arrested on a warrant for an incident that allegedly occurred on May 18, 1995. Grace Felicio claimed that Mr. Oliveira had threatened to kill her. Mr. Oliveira denied ever making such a statement. He did recall that he had become upset during an exchange of the child, when Ms. Felicio allegedly told him that he was not Matthew's father. The matter was referred to the Family Services Unit for assessment with a Full Protective Order entered, barring Mr. Oliveira from entering Ms. Felicio's dwelling. Following the arrest, Ms. Felicio said that she had not intended to have Mr. Oliveira arrested, but simply had wanted a record of her allegation. Mr. Oilveira was placed under the supervision of the Family Services Unit with the condition that he comply with the conditions of the Full Protective Order. His case is docketed for disposition on October 19, 1995, and it is anticipated that a nolle of the charge will be recommended.
CONCLUSIONS AND RECOMMENDATIONS
The parental conflict has continued, and again Matthew's contact with his father has been disrupted. Ms. Felicio persists in having difficulty accepting the demise of the relationship. The persistence and intensity of her anger toward Mr. Oliveira warrants a recommendation for individual mental health treatment with a professional versed in divorce related issues. It is further recommended that the child remain in counseling until such is discontinued by the treating professional. Continued sustained contact between the child and his father is seen as being important.
There does not appear at this time to be a basis to modify the recommendation made in February of 1995 for the mother to be granted sole custody of the child. It is recommended that the father's contact with the child initially be reinstituted by the father participating in two counseling sessions with the child and the child's therapist. It is also recommended that the father then pick up the child from school for week day visits and that all other exchanges of the child be monitored or effected through a third party.
Respectfully Submitted,
Leslie L. Raider, M.A. Family Relations Counselor CT Page 14197